## MERCHANT *v.* BUNNELL.

### September, 1867.

The profits on property. bought by a husband, as the agent of his wife, with her money, and afterward sold by him as her agent, at a great advance, are not subject to the claims of his creditors as being the results of his skill or ability, unless such transaction was had with intent to defraud his creditors. The profits of the separate estate of a wife, although the estate be managed by the husband as her agent, cannot be reached by the husband's creditors.*

Charles C. Merchant brought this action against Frederick D. Bunnell and Louisa his wife.

The plaintiff, as a judgment creditor of Frederick D. Bunnell, sought to charge a tract of land of three hundred and fifty-six acres, the title to which stood in the name of his wife, for the payment of said judgment. Mr. Bunnell, being insolvent, negotiated a purchase by his wife of an interest in a farm, for about three thousand dollars, she being aided in the purchase by the credit of her father. Mr. Bunnell made or aided in making some improvements, and immediately thereafter negotiated a sale, for about eight thousand dollars, and the purchaser, in payment thereof, assumed the debts Mrs. Bunnell had contracted in buying the property, and also conveyed to her the three hundred and fifty-six acres of land now in question.

---

* Cited and followed in Kluender *v.* Lynch, vol. 2, p. 538 of this series, and Abbey *v.* Deyo, 44 *N. Y.* 343.

Merchant *v*. Bunnell.

The court found as facts that Mr. Bunnell, the judgment debtor, did not pay any money or property or agree to pay any, either directly or indirectly, toward the land; nor did he or his wife actually intend to hinder, delay or defraud the plaintiff or any other creditor. That Mrs. Bunnell obtained the legal title by the exercise of the skill, talent and judgment of her husband, combined with her own, and by the labor of each, and by the use of the money which she obtained and paid on account of said purchase, and upon the security which she gave therefor. And as a conclusion of law the court held that the land was profits made in a speculation or business, mainly by the combined services, skill and judgment of Mr. and Mrs. Bunnell, and was liable in equity for the payment of debts which Mr. Bunnell owed at the time the same was purchased by Mrs. Bunnell; and judgment was rendered for the plaintiff accordingly, with costs.

*The supreme court,* on appeal from this judgment, held, that as nothing appeared to show any intent on the part of the wife at the time she purchased it, to sell the property, the case was distinguished from those in which a married woman is engaged in a regular business buying and selling, such as Lovett *v.* Robinson, 7 *How. Pr.* 105; Freeman *v.* Orser, 5 *Duer,* 476, and the property must be deemed bought as an investment. That regarding the transactions thus, as a distinct operation, there must have been something in the purchase or in the sale which gave the husband an interest to enable his creditors to reach it. That the evidence showed that it was an ordinary purchase of real estate by a married woman with her separate property, and the fact that the instrumentality of her husband was useful to her in effecting the purchase and a profitable sale, did not alter the case. They accordingly reversed the judgment. The plaintiff appealed to this court, and stipulated that if the order be affirmed judgment absolute might be rendered against him.

*Henry R. Mygatt,* for plaintiff, appellant;—Cited Sherman *v.* Elder, 1 *Hilt.* 478;* Birdseye *v.* Flint, 3 *Barb.* 500; Oulds *v.* Sansom, 3 *Taunt.* 261; Graham *v.* Jackson, 6 *Q. B.* 811 (51

* Rev'd in 24 *N. Y.* 381.

Merchant *v.* Bunnell.

*E. C. L.*); People *v.* Townsend, 3 *Hill*, 479; Glover *v.* Proprie-
tors Drury Lane, 2 *Chit.* 117, 188; *C. L.* 540; Offey *v.* Clay,
2 *Man. & G.* 172; Russell *v.* Brooks, 7 *Pick.* 65; Shuttleworth
*v.* Noyes, 8 *Mass.* 229; Starret *v.* Wynn, 17 *S. & R.* 130; Snyder
*v.* Snyder, 3 *Barb.* 621; 1 *Hill*, 334; 3 *Moore & P.* 143; 2
*Sand. Ch.* 570; Lovett *v.* Robinson, 7 *How. Pr.* 105; 2 *Kent
Com.* 130; *Clancy*, 3; 2 *Barb.* 352; Petty *v.* Anderson, 3
*Bing.* 170; *Clancy*, 27; Graham *v.* Van Wyck, 14 *Barb.* 531;
Coon *v.* Brook, 21 *Id.* 546; 7 *How. Pr.* 105; Glann *v.* Young-
love, 27 *Barb.* 480; Gage *v.* Dauchy, 28 *Id.* 622;* Freeman *v.*
Orser, 5 *Duer*, 477; Switzer *v.* Valentine, 10 *How. Pr.* 109; 4
*Duer*, 96; Burger *v.* White, 2 *Bosw.* 92; Gates *v.* Brower, 9
*N. Y.* (5 *Seld.*) 205; Shumway *v.* Cooper, 16 *Barb.* 556; 2 *R.
S.* 75, § 29; *Bac. Abr.* Stat. D; 1 *Bradf.* 64; Vallance *v.*
Bausch, 28 *Barb.* 633; S. C., 8 *Abb. Pr.* 368; 17 *How. Pr.* 243;
Bowen *v.* Lease, 5 *Hill*, 226; 9 *Cow.* 437, 506; Gamber *v.* Gam-
ber, 18 *Penn.* 363; Keeney *v.* Good, 21 *Id.* 349; Stanton *v.*
Kirsch, 6 *Wis.* 338; Freeman *v.* Orser, 5 *Duer*, 483; Hoar *v.*
Axe, 22 *Penn.* 381, 384; 31 *Id.* 328; 29 *Id.* 513; Cropsey *v.*
McKinney, 30 *Barb.* 55; Aubles *v.* Mason, 35 *Penn.* 311;
Bradford's Appeal, 5 *Cas.* 515; Topley *v.* Topley, 7 *Id.* 328;
Manderbach *v.* Mock, 29 *Penn.* 43, 45; Raybold *v.* Raybold,
20 *Id.* 311; Bradford Appeal, 29 *Pa.* 513; Switzer *v.* Valentine,
4 *Duer*, 96; Hopkins *v.* Cary, 23 *Miss.* 54; Penn. *v.* White-
heads, 12 *Gratt.* 74; Hallowell *v.* Horter, 35 *Penn.* 380;
Knapp *v.* Smith, 27 *N. Y.* 280; Buckley *v.* Wells, 33 *Id.* 520;
rev'g 42 *Barb.* 569; North *v.* Bloss, 30 *N. Y.* 374; Thompson
*v.* Kessel, *Id.* 384; Dayton *v.* Borst, 31 *Id.* 435; Crocker *v.*
Crocker, *Id.* 507; rev'g in part, 17 *How. Pr.* 504; State of
Michigan *v.* Phœnix Bank, 33 *N. Y.* 9; modifying 7 *Bosw.* 20;
34 *N. Y.* 169.

*Pratt, Mitchell & Brown*, attorneys for defendants, respond-
ants;—Cited Darby *v.* Callaghan, 16 *N. Y.* 71; Knapp *v.*
Smith, 27 *Id.* 277; 2 *Kent Com.* 149, note 2, 8 ed.; Buckley *v.*
Wells, 33 *N. Y.* 518; Sherman *v.* Elder, 24 *Id.* 381; Hool
*v.* Sorrell, 11 *Ala.* 386; 4 *N. Y.* 273; 2 *R. S.* 728, § 52; Bab-
cock *v.* Eckler, 24 *N. Y.* 623; *L.* 1848, c. 200; 1849, c. 375;

---

* Rev'd in 34 *N. Y.* 293.

1860, c. 90 ; 1862, c. 172 ; 1845, c. 11 ; 1850, c. 91 ; 1851, c. 321 ; 1853, c. 561 ; Hurd *v.* Cass, 9 *Barb.* 367, and see 28 *Id.* 343 ; Dickerman *v.* Abrahams, 21 *Id.* 551 ; Van Ellen *v.* Carrier, 29 *Id.* 644 ;* Burger *v.* White, 2 *Bosw.* 92 ; Darby *v.* Callaghan, 16 *N. Y.* 79; Manderback *v.* Mark, 29 *Penn.* 43 ; *Clancey Rights of Married Women,* 282, 293 ; 2 *Kent Com.* 165 ; Jacques *v.* Methodist Episcopal Church, 1 *Johns. Ch.* 450 ; 28 *Barb.* 522 ; 27 *Id.* 480 ; 21 *Id.* 546 ; 7 *How. Pr.* 105 ; Stanton *v.* Klinck, 6 *Wis.* 358 ; Gamber *v.* Gamber, 18 *Penn.* 363 ; Rooney *v.* Gord, 21 *Id.* 349 ; 2 *Barb.* 493 ; 3 *Id.* 500.

BY THE COURT.—DAVIES, Ch. J. [After stating the facts.]— The only question presented for adjudication in this case is, whether property bought by the husband as the agent of his wife, with her money, and afterward sold by him as her agent at a profit, is to the extent of the profit, subject to the claims of the creditors of the husband, on the ground that the profit was the result of his skill or ability ; it having been found by the court as already stated, that the property was not bought or sold with intent to defraud the creditors of the husband. It is to be observed, in the first place, that it is difficult, if not impossible, to separate and determine the proportion of profit exclusively derived from the talent, skill and ability of the husband, from that derivable from the capital, talent and skill of the wife. It is very clear that the court, upon the trial of the action, erred in assuming that the whole profit made by the use of the money and credit of the wife, and her talent and skill, was exclusively the product of the skill and ability of the husband. No discrimination was made by the court which tried the action, as to what part of the profit was the result or product of the labors of the husband, or what was produced by the use of the money and credit of the wife. The difficulty, if not impossibility, of making this discrimination, may probably have led the court into the error of holding that the whole profit, made upon the investment of the money of the wife, was exclusively due to the skill and talent of the husband. The real question for adjudication is, whether the profits de-

---

* Affirmed in this court ; reported in this series.

rived and made from an investment of the money of the principal, in the name of the principal, by an agent, acting as such, belongs and is the property of the principal or is that of the agent? The simple statement of this proposition carries with it the appropriate answer, and the result is none the less the same, because the principal and agent may sustain other relations to each other, as even in the present case, the intimate one of husband and wife.

This court has frequently held, that there is nothing in the marriage relation which forbids the wife to employ her husband as her agent in the management of her estate and property, and that such employment does not subject her property, or the profits arising from such business, to the claims of the creditors of her husband. Sherman *v.* Elder, 24 *N. Y.* 381; Knapp *v.* Smith, 27 *Id.* 277; Buckley *v.* Wells, 33 *Id.* 518; Gage *v.* Dauchy, 34 *Id.* 293.

These cases conclusively establish the right of the wife to her separate estate, and that neither the same nor the profits derived therefrom, although the same be managed by the husband as the agent of the wife, can be subjected, by the creditors of the husband, to the payment of his debts. The precise point now presented for adjucation arose and was decided in Buckley *v.* Wells (*supra*). It was there held, that a married woman is entitled to the profits of mercantile business conducted by the husband in her name when the capital is furnished by her, and he has no interest but that of a mere agent.

It was pertinently observed by Judge PORTER, in this case: "The creditors of the husband have no right to complain if persons are found who are willing to give credit to the wife. If they cannot enforce their claim at law against her, it is their misfortune, and does not concern or affect the rights of the husband's creditors; and it is difficult to see how it thereby tends to vest the title of the property purchased for her, and for which credit is given to her, in her husband. It is also said that the skill and labor of the husband, when employed by the wife, as in this case, enters into and forms as it were a part of the property and increases its value. If the business is successful, granted, but the title is not thereby divested; at most he could but have a lien for his wages. The whole case turns

upon the question, whether a wife having separate property can employ her husband as her agent. If she can, then the objections raised cannot avail as a defense. This question was distinctly settled in Knapp *v.* Smith, 27 *N. Y.* 277, where the law is very distinctly laid down, and where it was held that a married woman, having property of her own, could manage it by the agency of her husband or any other, and hold the profits and increase to her separate use."

The doctrine of these cases has received the emphatic approval of this court in the case of Gage *v.* Dauchy, *supra.*

The order granting a new trial in this action should be affirmed, and, in the pursuance of the appellant's stipulation, judgment absolute should be rendered against him, with costs.

All the judges concurred.

Order granting new trial affirmed, and judgment absolute for the defendants, with costs.